IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID A. DEWAR, | ) |
|     Pro se *Plaintiff*, | ) ) ) ) |
| v. | ) ) No. 16 C 2287 |
| CHICAGO POLICE DEPARTMENT and CHICAGO POLICE OFFICERS T.J. FELMON, M.K. DEVINE, C.J. LONG, | ) ) Judge Virginia M. Kendall ) ) ) ) |
|     *Defendants*. | ) |

**MEMORANDUM OPINION AND ORDER**

The Dewar and Hosty families are next-door neighbors that have a history of conflict reminiscent of Clark Griswold and his cohorts in *National Lampoon's Christmas Vacation*. In the latest episode, David Dewar and William Hosty had words during a winter storm because Hosty blew snow over Dewar's back fence and onto his home's side windows. Hosty heard Dewar scream "something about an ass-kicking," and in fear for his life, he yelled for his daughter-in-law to call the police. Two officers responded to the scene, and after their investigation and attempted dispute resolution, arrested Dewar for assaulting Hosty.

Following this incident, Dewar sued the Chicago Police Department and the officers claiming they violated his constitutional rights by: falsely arresting him without probable cause, coercing a false confession after failing to *Mirandize* him, and conspiring together to procure those illegal results. The defendants moved for

summary judgment (Dkt. 112) arguing that there was probable cause to arrest, Dewar never confessed to anything, and consequently the defendants did not conspire to violate any of Dewar's civil rights.

Because there is no genuine dispute as to any material fact, the Court grants the defendants' motion (Dkt. 112) and enters judgment as a matter of law for them on the false confession and conspiracy claims. As to the false arrest claim, however, the Court denies the defendants' motion (Dkt. 112) and hereby notifies them that it will *sua sponte* enter summary judgment for Dewar on February 14, 2019 unless they respond with admissible evidence showing that the officers had probable cause to arrest Dewar. In Illinois, assault requires at least one gesture to accompany the threatening words.

## BACKGROUND

Officers Felmon and Devine responded to a 9-1-1 call for help regarding an individual's alleged assault for the errant and inconsiderate snow blowing of his son's driveway. (Dkt. 114 ¶ 10.) According to the officers, the victim's mother, Shirley Dewar, was screaming unintelligibly when they pulled up. (Dkt. 114 ¶ 12; Dkt. 117 ¶ 12.) After arriving at the scene, the officers spoke to the victim, William Hosty, outside of his son's home. (Dkt. 114 ¶ 11.) Hosty was calm, coherent, and consistent. *Id.* ¶ 18. Hosty told the officers that there had been an argument between him and his son's neighbor, David Dewar, pertaining to Hosty blowing the snow off his son's driveway onto Dewar's house. *Id.* ¶ 13. Hosty said that, during this quarrel, Dewar

threatened him by stating something like "I'm going to kick your ass." (Dkt. 114 ¶ 17.)

Hosty testified at his deposition regarding some more details that he may or may not have told the officers about. Notwithstanding that, the officers failed to include this information in the arrest report or their affidavits, so the Court assumes the officers were not aware of these facts at the time. Hosty stated that Dewar was standing about 15 feet away when he threatened him. (Dkt. 117 at 3, ¶ 9 (a dozen); at 67 (15); at 94–95 (six or eight).) He also said that he noticed Dewar recording him on his phone, and although he could not understand exactly what Dewar was saying because the snow blower was on and the wind was blowing, Hosty heard him screaming. *Id.* at 66, 89, 95.

Hosty did, however, make out that Dewar was talking about the snow going onto the property and "something about an ass kicking." *Id.* at 68, 89, 95. That is when Hosty yelled for his daughter-in-law to call the police. *Id.* at 68. Around the same time, Dewar called 9-1-1, too. *Id.* at 33, ¶ 10. After that, Hosty continued to blow snow and did not interact with Dewar until the police came ten minutes later. *Id.* at 68–70, 73, 121–22, 126. Dewar stood there, at least for a while, and waited. *Id.* at 69–70. But, at some point, Dewar did go back inside because the police later met him at his front door. *Id.* at 70.

Returning to the officers' accounts, they next talked Dewar in front of his and his mother's home. (Dkt. 114 ¶ 11.) The officers stated that Shirley Dewar continued to scream throughout this discussion. *Id.* ¶ 15. For his part, Dewar rejects that his

mother ever screamed. (Dkt. 117 ¶ 15.) Based on the Dewars' telling of the story, Shirley Dewar tried to resolve the matter with Hosty earlier in the evening, and after she could not, she asked her son to intervene. *Id.* at 33, ¶¶ 8–9. Dewar complained to the officers that Hosty blew the snow onto the windows of his house. *Id.* ¶ 14. The Dewars state in their affidavits that the snow sometimes leaks into their house. (Dkt. 117 at 32 ¶ 7.) Although Dewar denies this happened, the window-damage allegation led the officers to investigate the windows, but they claim they did not see any snow on the window screen, ledge, or under the window itself. (Dkt. 114 ¶ 16; Dkt. 117 ¶ 16; *id.* at 33 ¶ 12.)

Dewar disputed—and still disputes—that he ever threatened Hosty with an ass-kicking or in any other way. (Dkt. 114 ¶ 27; Dkt. 117 ¶¶ 17, 19.) As such, Dewar never confessed to assaulting Hosty. (Dkt. 114 ¶ 27; Dkt. 117 ¶¶ 26–27.) Dewar did, upon the officers' directions, attempt to apologize to Hosty, but to no avail. (Dkt. 117 at 34 ¶¶ 13–15.) Following these conversations, Hosty signed a criminal complaint asserting that Dewar assaulted him. (Dkt. 114 ¶ 19.) As a result, the policemen arrested Dewar. Dkt. 114 ¶ 20.

Back at the police station, Officer Felmon prepared the arrest report. *Id.* ¶ 22. Sergeant Long, the officers' supervisor who was not present at the scene, reviewed and approved the report. *Id.* ¶¶ 23, 25. In doing so, Sergeant Long acknowledged that there was probable cause to arrest based on the information in the report, in addition to that given to him by Officer Devine and the fact that Hosty signed a

complaint for Dewar's arrest. *Id.* ¶¶ 23–24. After his mother posted his bail, law enforcement released Dewar approximately four hours after his arrest. *Id.* ¶ 28.

The State later charged Dewar with assault. *Id.* ¶ 31. About a month after that, the State struck the case because Hosty apparently decided not to proceed. *Id.* ¶ 32. This federal civil rights lawsuit followed.

## STANDARD OF REVIEW

Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, then, the Court construes all facts and draws all reasonable inferences in favor of the non-movant. *See Daugherty v. Page*, 906 F.3d 606, 609–10 (7th Cir. 2018) (citing *Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018)). The parties genuinely dispute a material fact when "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Zander v. Orlich*, 907 F.3d 956, 959 (7th Cir. 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

The Officers moved for summary judgment on the three claims asserted by Dewar: (1) false arrest; (2) involuntary confession; (3) and conspiracy. As a

preliminary matter, Dewar argues that he also included excessive bail and malicious prosecution counts in his complaint. That is wrong, though Dewar need not plead law. *See Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 859–60 (7th Cir. 2017). Even so, Dewar needed to raise factual allegations in his complaint, and he failed to do so regarding excessive bail and malicious prosecution. *See id.* Dewar's inclusion of these additional claims in his response in opposition to the officers' motion for summary judgment is "[a]n attempt to alter the factual basis of" his claims, which "amount[s] to an attempt to amend the complaint." *Id.* at 859. This Court already denied Dewar's previous motions for leave to amend his complaint. (Dkt. 103, 108.) In keeping with its prior rulings and in a continued exercise of its discretion, the Court denies this "*de facto* amendment" and "refuse[s] to consider the new factual claims." *Id.* (citations omitted). Dewar forfeited these arguments by raising them for the first time at summary judgment.

Another threshold issue is Dewar's claim that the officers coerced him into falsely confessing to assaulting Hosty. In the parties' briefing, however, they do not dispute the fact that Dewar never confessed to this crime. (Dkt. 114 ¶ 27; Dkt. 117 ¶¶ 26–27.) Furthermore, in his response, Dewar states that he does not oppose the entry of summary judgment in the officers' favor on the involuntary confession claim. (Dkt. 117 at 2 n.2.) Because the parties agree, and there being no basis in law or fact to disturb their proposed resolution, the Court grants the officers' motion for summary judgment as to the involuntary confession count.

## I. False Arrest

Turning to the first of the two remaining counts, probable cause is an absolute defense to any claim under 42 U.S.C. § 1983 against a police officer for falsely arresting the plaintiff. *See Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 713–14 (7th Cir. 2013) (citing *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006)). Probable cause exists "if the totality of the facts and circumstances known to the officer at the time of the arrest would warrant a reasonable, prudent person in believing that the arrestee had committed, was committing, or was about to commit a crime." *Id.* (citing *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012); *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Beck v. Ohio*, 379 U.S. 89, 91 (1964)).

A single witness's or putative victim's complaint generally suffices to establish probable cause so long as the complaint would not lead a reasonable officer to be suspicious. *See United States v. Geasland*, 694 F. App'x 422, 432–33 (7th Cir. 2017), *cert. denied*, 138 S. Ct. 699 (2018) (citing *United States v. Decoteau*, 932 F.2d 1205, 1207 (7th Cir. 1991); *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003)); *McDaniel v. Polley*, 847 F.3d 887, 895 n.5 (7th Cir. 2017), *cert. denied sub nom. McDaniel v. Foster*, 138 S. Ct. 554 (2017); *see also Hurem v. Tavares*, 793 F.3d 742, 746 (7th Cir. 2015) (citing *Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013)); *Spencer v. Pistorius*, 605 F. App'x 559, 564 (7th Cir. 2015) (citations omitted).

In this case, Dewar denies that he threatened Hosty but he does not dispute that Hosty reported the threat to the officers and signed a complaint against him alleging as much. (Dkt. 117 at 4 ¶ 10, 5 ¶ 17, 6 ¶ 19.) Dewar admits that Hosty did

not appear intoxicated and does not otherwise contest—short of denying the threat and crime occurred—Hosty's credibility or whether the officers should have been suspicious of him. *Id.* at 18 ¶ 19. Regardless, the officers acted as if they did doubt Hosty because they spoke with all parties, and according to the officers, they investigated Dewar's snow-blowing complaints (although legally they did not have to). Thus, at the time of arrest, the officers objectively knew Hosty's verbal description of the events and the fact that he signed a criminal complaint stating that Dewar assaulted him. For purposes of probable cause, Dewar's denial of the threat, any lack of investigation, or that the officers did not personally witness the threat do not override Hosty's complaint. What does overcome the complaint, however, is a missing element of the offense, which the officers must have probable cause of before arresting: a gesture.

Probable cause "depends, in the first instance, on the elements of the predicate criminal offense(s) as defined by state law." *Abbott*, 705 F.3d at 715 (citations omitted); *see Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016) (citing *Stokes v. Bd. of Educ. of the City of Chicago*, 599 F.3d 617, 622 (7th Cir. 2010)). Here, the officers arrested Dewar and the state charged him with simple assault. In Illinois, a person commits an assault when he or she "'knowingly engages in conduct which places another in reasonable apprehension of receiving a battery.'" *Abbott*, 705 F.3d at 715 (quoting 720 ILCS 5/12–1(a)). "Words alone seldom if ever are sufficient to constitute an assault; rather, there must be an accompanying gesture that is either inherently threatening or made so by the accompanying words." *Id.* (citing *Kijonka*

*v. Seitzinger*, 363 F.3d 645, 647 (7th Cir. 2004); *People v. Floyd*, 663 N.E.2d 74, 76 (Ill. 1996); *Fox v. Hayes*, 600 F.3d 819, 838 (7th Cir. 2010)).

In *Kijonka*, the Seventh Circuit recognized "gesture" as an element of the offense. 363 F.3d at 647. The court cleaned up some of its earlier dicta, based on Illinois Supreme Court dicta, which intimated that there might be a rare case where mere words sufficed. *See id.* at 647–48 (citing *Floyd*, 663 N.E.2d at 75, which stated that "words alone are not *usually* enough to constitute an assault" (emphasis added)). The court concluded that inserting "usually" into the rule "was just an unnecessary hedge," and insisted that this additional term was an "unnecessary qualification" that misstated the law. *Id.*

Both federal and state courts to survey this issue conclude that assault requires a gesture. *See People v. Williams*, 2017 IL App (1st) 143557-U, ¶ 18 (explaining that "some action or condition *must* accompany those words for the conduct to be an assault" (emphasis added)) (citation omitted); *People v. Taylor*, 2015 IL App (1st) 131290, ¶ 18 ("We cannot find any Illinois cases that would support a conviction because mere words alone without a gesture objectively does not place a person in reasonable apprehension of receiving a battery."); *see, e.g.*, *Baker v. Ghidotti*, No. 11 C 4197, 2014 WL 1289566, at *4 (N.D. Ill. Mar. 28, 2014) (asserting that "[a]ssault involves either a threatening gesture or an otherwise innocent gesture made threatening by accompanying words, such that it creates a reasonable apprehension of an imminent battery.") (citing *Kijonka*, 363 F.3d at 647); *Truesdale v. Klich*, No. 03 C

8209, 2006 WL 1460043, at *5 (N.D. Ill. May 23, 2006) (declaring that "[n]o published Illinois case finds words alone to be sufficient to constitute assault.").

Here, the officers do not dispute that Dewar made no gesture at or toward Hosty. The complaint, arrest report, and officers' affidavits all indicate that Dewar said something like "I'm going to kick your ass" to Hosty. (Dkt. 114 ¶ 17; Dkt. 117 at 141, 146.) But there is no evidence in this record suggesting that a threatening gesture accompanied Dewar's words, such as "raising his fist, pointing a gun, or moving to grab a weapon." *See, e.g.*, *Baker*, 2014 WL 1289566, at *4; *see Taylor*, 2015 Il App (1st) 131290, ¶ 16 (using "wielding a tire iron, holding a gun, or driving a vehicle into the victim" as examples). Dewar's words, standing alone, do not cause a reasonable person to apprehend a battery. *See Taylor*, 2015 Il App (1st) 131290, ¶¶ 13, 16–17 (threatening to "get" someone or "kick [his or her] ass" does not place a reasonable person in fear of a battery); *Kijonka*, 363 F.3d at 646–47 (intimidating a victim by saying ". . . your ass is mine you son of a bitch and I will get you" does not cause that person to reasonably apprehend a battery).

That Dewar's purported threat did in fact place Hosty in fear of receiving a battery is beside the point, seeing that an objective standard is used to evaluate whether the victim's apprehension is reasonable or not. *See Taylor*, 2015 IL App (1st) 131290, ¶¶ 14, 18; *Abbott*, 705 F.3d at 715; *see, e.g.*, *Baker*, 2014 WL 1289566, at *4 (citing *Floyd*, 663 N.E.2d at 76); *Truesdale*, 2006 WL 1460043, at *5 (citations omitted). Moreover, Hosty's claim that he felt like his life was in danger is even more head-scratching when stacked up against his testimony. Hosty stated that Dewar

was 15 feet away from him, he could barely hear Dewar above the snow blower and the wind, and he continued to plow his son's driveway for 10 minutes while waiting for the police even though Dewar retreated to his home. (Dkt. 117 at 66–67, 68–70, 73, 89, 95, 121–122, 126.) True enough, it appears that Hosty did not apprise the officers of these facts at the time of arrest, which means that they did not base their probable cause analysis on them. That said, assuming a verbal threat could constitute an assault, Dewar's words would not have made a reasonable person fear an impending battery in this case.

A threat is distinct from an assault, and no reasonable jury could find that the circumstances known to the officers at the time gave them probable cause to arrest Dewar for an assault. *See Fox*, 600 F.3d at 838. The question becomes, then, whether the officers' mistaken belief that probable caused existed was reasonable, therefore entitling them to qualified immunity. *See Abbott*, 705 F.3d at 714–15. As stated above, there are no reported cases in Illinois "that found the elements of assault satisfied in any case remotely like this one . . ." *Kijonka*, 363 F.3d at 648; *see Taylor*, 2015 IL App (1st) 131290, ¶ 18; *see, e.g.*, *Truesdale*, 2006 WL 1460043, at *5. In fact, there are cases with facts like those here that affirmatively hold the opposite. *See Kijonka*, 363 F.3d at 646–47; *Taylor*, 2015 Il App (1st) 131290, ¶¶ 13, 16–17. Therefore, no reasonable officer could have believed it was lawful to arrest Dewar under these circumstances. Because Dewar did not make a gesture, he did not commit a crime, and the Constitution required that the officers know that.

There being no genuine dispute as to any material fact, the Court intends to enter summary judgment on its own motion for Dewar on the false arrest claim. *See* Fed. R. Civ. P. 56(f); *Haley v. Kolbe & Kolbe Millwork Co.*, 863 F.3d 600, 613 (7th Cir. 2017). To properly do so, the Court must give the officers notice of this inclination (which it does in this opinion) and an opportunity to respond. *See Haley*, 863 F.3d at 613. Should the officers have any evidence that they had probable cause to arrest Dewar for an assault because he did make a gesture, they need to come forward with it no later than **[30 DAYS]**. *See Hertel v. Miller-Lewis*, 695 F. App'x 957, 961 (7th Cir. 2017).

This direction includes Sergeant Long, who by his own admission did not respond to the 9-1-1 call or assist in Dewar's arrest, but did review the arrest report and approve probable cause. (Dkt. 114 ¶¶ 23–25.) In other words, he personally knew "about the conduct and facilitate[d] it, approve[d] it, condone[d] it," which is good enough for supervisory liability under § 1983. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (citing *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012)). Accordingly, the Court denies the officers' motion for summary judgment on the false arrest claim.

## II. Conspiracy

Moving to the conspiracy claim, to prevail on it, Dewar "must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights.'" *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (quoting *Beaman v. Freesmeyer*, 776 F.3d 500, 510

(7th Cir. 2015)). Well, as set forth above, Dewar showed an underlying constitutional violation. So, the only question remaining is whether Dewar can "'demonstrate that the defendants agreed to inflict the constitutional harm.'" *Id.* (quoting Hurt v. Wise, 880 F.3d 831, 842 (7th Cir. 2018)).

In this case, Dewar failed to introduce any evidence that supports his contention that an agreement existed among the officers to deprive him of his constitutional rights. Dewar merely speculates that the officers schemed to arrest him without probable cause. There is simply no evidence, circumstantial or otherwise, that Dewar can identify to demonstrate that the officers were out to get him. A reasonable jury could not conclude that the officers had a meeting of the minds that gave them the joint and mutual understanding necessary to achieve the conspiracy's objectives. *See id.*

Indeed, the only dispute Dewar has with any facts are those regarding him and his family's history with their neighbors, the Hostys. (Dkt. 117 at 12.) Dewar claims this incident was payback for those bygones, however there is no evidence that shows the officers were even aware of the long-running squabble, let alone that they "willingly participated" in it. *Id.* Contrary to Dewar's contentions, the officers did not disregard his statements. *Id.* Even if they did, that would have been in-bounds. *See Geasland*, 694 F. App'x at 432–33 (citations omitted). True, the officers falsely arrested Dewar; but it does not follow that they conspired to do so.

## CONCLUSION

Because the parties do not genuinely dispute any material fact, the Court grants the officers' motion (Dkt. 112) and enters judgment as a matter of law for them on the involuntary confession and conspiracy claims. With respect to the false arrest claim, however, the Court denies the officers' motion (Dkt. 112) and notifies them that it will move to enter summary judgment for Dewar on February 14, 2019 unless the officers can proffer facts that demonstrate Dewar made a gesture toward Hosty, therefore giving them probable cause to arrest Dewar for assault.

_____
Virginia M. Kendall
United States District Judge

Date: January 16, 2019